**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| **BIJAN SEIFI,** ) | |
| **ID # 13151-078,** ) | |
|       Movant, ) | No. 3:13-CV-3492-N-BH |
| vs. ) | (No. 3:11-CR-0345-N) |
| ) | (No. 3:12-CR-093-N) |
| **UNITED STATES OF AMERICA,** ) | |
|       Respondent. ) | Referred to U.S. Magistrate Judge |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Pursuant to *Special Order 3-251*, this case has been automatically referred for findings, conclusions, and recommendation. Based on the relevant findings and applicable law, the *Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody,* filed August 30, 2013 (doc. 2), should be **DENIED** with prejudice.

**I.  BACKGROUND**

Bijan Seifi (Movant), a federal prisoner, challenges his federal convictions and sentences in cases Nos. 3:11-CR-345-N and 3:12-CR-093-N. The respondent is the United States of America (Government).

**A.     Factual and Procedural History**

On July 6, 2011, Movant fell asleep behind the wheel of a car stopped at an intersection. When police officers responded and tried to wake him up, they saw a 9 mm pistol on his lap and ordered him to put his hands up.  After officers detained him, they recovered the gun, a Smith and Wesson, Model SW9VE, 9 millimeter pistol, bearing serial number RAW6937. Movant was arrested and released after posting bond. (No.3:11-CR-345-N(1), doc. 16 at 2-3.[1])

On October 11, 2011, Movant entered the First Convenience Bank in Plano, Texas, and

---

[1] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

approached a teller. As he purported to fill out a Western Union form, he showed the bank teller a note and asked her to read the "directions." Movant told her not to press the alarm, and she later remembered that the note referenced the words "gun" and "rob." A bank supervisor approached Movant and the teller, causing him to then run out of the bank and flee in a vehicle. (No. 3:12-CR-093-N, doc. 1 at 16-17.)

The next day, October 12, 2011, Movant entered the BBVA Compass Bank on Preston Road in Dallas. He asked a teller if he could write a check, the teller asked for his driver's license, and Movant said it was in his car and walked outside. He then re-entered the bank, approached another teller, and produced a note that mentioned a "weapon" and essentially read: "This is a bank robbery, no dye pack, don't set alarm, give me all your money." The teller handed him approximately $3,393 and he fled the bank. Movant was later arrested. (No.3:11-CR-345-N, doc. 16 at 4.)

In February 2012, Movant agreed to plead guilty in case No. 3:11-CR-345 to a superseding indictment charging him with being a felon-in-possession on July 6, 2011, when officers found him with a 9 mm handgun (Count 1), and with robbery of a BBVA Compass Bank on October 12, 2011 (Count Two). (No.3:11-CR-345, docs. 11, 16, 17) Meanwhile, he was also indicted in the United States District Court for the Eastern District of Texas for an attempted robbery at the First Convenience Bank on October 11, 2011. Movant consented to transfer of the case to this district for a consolidated rearraignment and sentencing. (No.3:12-CR-093, doc. 1.) On April 10, 2012, pursuant to written plea agreements that waived his right to appeal and to pursue post-conviction relief, Movant pleaded guilty to all three counts. (No.3:11-CR-345, doc. 17, 45; No.3:12-CR-093, doc. 1 at 9-17.) The Court sentenced him to 92 months' imprisonment on each count, to be served concurrently with each other and with several pending Dallas County cases. (September 17, 2012 Sent Tr. (Tr.) at 20-22.)

**B.     Substantive Claims**

Movant alleges that counsel was ineffective at sentencing for failing to produce an expert to testify regarding sexual abuse and post-traumatic stress disorder ("PTSD") (ground one), and for failing to challenge the multiple-count enhancement under the guidelines (ground three). (doc. 2 at 5, 8; doc. 3, 13, 19.) In ground two, Movant alleges the Court "disregarded" his victimization and failed to conduct an evidentiary hearing regarding his "disputed' history. (doc. 2 at 5; doc. 3 at 16.)

## II.  SCOPE OF RELIEF AVAILABLE UNDER § 2255

"Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996) (citations and internal quotation marks omitted). It is well established that "a collateral challenge may not do service for an appeal." *United States v. Shaid*, 937 F.2d 228, 231 (5th Cir. 1991) (*en banc*) (quoting *United States v. Frady*, 456 U.S. 152, 165 (1982)).

A failure to raise a claim on direct appeal may procedurally bar an individual from raising the claim on collateral review. *United States v. Willis*, 273 F.3d 592, 595 (5th Cir. 2001). Defendants may only collaterally attack their convictions on grounds of error omitted from their direct appeals upon showing "cause" for the omission and "actual prejudice" resulting from the asserted error. *Shaid*, 937 F.2d at 232. However, "there is no procedural default for failure to raise an ineffective-assistance claim on direct appeal" because "requiring a criminal defendant to bring [such] claims on direct appeal does not promote the[] objectives" of the procedural default doctrine, "to conserve judicial resources and to respect the law's important interest in the finality of judgments." *Massaro v. United States*, 538 U.S. 500, 503-04 (2003). The Government may also waive the procedural bar defense. *Willis*, 273 F.3d at 597.

### III. WAIVER

In ground two, Movant claims that the Court erred in not holding an evidentiary hearing regarding "disputes" over his history and thus "disregarded" his childhood sexual abuse. (doc. 2, at 5; doc. 3 at 16-18.) The Government argues that his claim is barred based on the waiver he signed in each of the underlying criminal cases. (doc. 12 at 21.)

Movant's plea agreement in No. 3:11-CR-345-N included an express "Waiver of Right to Appeal or Otherwise Challenge Sentence", which stated:

> Seifi waives his rights, conferred by 28 U.S.C. 1291 and 18 U.S.C. § 3742, to appeal from his conviction and sentence. He further waives his right to contest his conviction and sentence in any collateral proceeding, including proceedings under 28 U.S.C. § 2241 and 28 U.S.C. § 2255. Seifi, however, reserves the rights (a) to bring a direct appeal of (i) a sentence exceeding the statutory maximum punishment, or (ii) an arithmetic error at sentencing, (b) to challenge the voluntariness of his plea of guilty or this waiver, and (c) to bring a claim of ineffective assistance of counsel.

(No.3:11-CR-345, doc. 17 at 6, ¶ 11.)[2]

Generally, "an informed and voluntary waiver of post-conviction relief is effective to bar such relief." *United States v. Wilkes*, 20 F.3d 651, 653 (5th Cir. 1994) (per curiam), *accord United States v. White*, 307 F.3d 336, 343 (5th Cir. 2002). "A defendant's waiver of [his or] her right to appeal is not informed if the defendant does not know the possible consequences of [the] decision." *United States v. Baty*, 980 F.2d 977, 979 (5th Cir. 1992). A defendant's waiver of the right to appeal

---

[2] The waiver paragraph in the Eastern District case stated:

> Except as otherwise provided herein, the defendant expressly waives the right to appeal the conviction, sentence, fine and/or restitution or forfeiture in this case on all grounds. The defendant further agrees not to contest the conviction, sentence, fine and/or order of restitution or forfeiture in any post-conviction proceeding, including, but not limited to a proceedings under 28 U.S.C. § 2255. The defendant, however, reserves the right to appeal the following: (a) any punishment imposed in excess of the statutory maximum, and (b) a claim of ineffective assistance of counsel that affects the validity of the waiver of the plea itself.

(No.3:12-CR-093, doc. 1 at 13-14.)

requires special attention from the district court, and it is the district court's responsibility to ensure that a defendant fully understands his right to appeal and the consequences of waiving that right. *Id*. In assessing whether a waiver precludes a claim, a court considers (1) whether the waiver was made knowingly and voluntarily, and (2) whether "the waiver applies to the circumstances at hand, based on the plain language of the agreement." *United Sates v. Jacobs,* 635 F.3d 778, 781 (5th Cir. 2011)(internal quotation marks omitted). A waiver is informed and voluntary if the defendant understands his appellate rights and the consequences of waiving them. *Id.*

Movant does not contend in any of his claims either that his guilty pleas or waivers were involuntary or that his attorney was ineffective in his representation concerning the guilty pleas or waivers. Because his second claim falls outside these narrow exceptions, he may not assert it this § 2255 motion.

In addition, Movant's allegations are refuted by the record. Movant's childhood abuse was undisputed, and the Court expressly considered it when it evaluated his request for a departure or variance. It also made recommendations to the Bureau of Prisons (BOP) regarding mental health treatment and placement for Movant. (Tr. at 17-19, 21.) Ultimately, it concluded the abuse did not warrant a lesser sentence. (Tr. at 18-19.) Movant's disagreement with the sentence is not a sufficient basis for relief. His second ground should be denied.

### IV. INEFFECTIVE ASSISTANCE OF COUNSEL

In his first and third grounds for relief, Movant claims that counsel provided ineffective assistance.

The Sixth Amendment guarantees a criminal defendant the right to effective assistance of

counsel.[3] *Strickland v. Washington*, 466 U.S. 668 (1984); *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). To successfully state a claim of ineffective assistance of counsel, the prisoner must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced his or her defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). A failure to establish either prong of the *Strickland* test requires a finding that counsel's performance was constitutionally effective. *See* 466 U.S. at 697. The prongs may be addressed in any order. *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

In determining whether counsel's performance is deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance." *Strickland*, 466 U.S. at 689. "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Id.* at 691. To establish prejudice, a movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694; *Williams v. Taylor*, 529 U.S. 362, 393 n.17 (2000) (inquiry focuses on whether counsel's deficient performance rendered the result of the trial unreliable or the proceeding fundamentally unfair). Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent counsel's alleged errors. *Strickland*, 466 U.S. at 695-96.

**A.** **<u>Expert Regarding Childhood Abuse</u>**

In his first ground, Movant faults counsel for not being "more effective" at sentencing because he failed to produce an expert to testify regarding how he was sexually abused and had

---

[3] The Sixth Amendment to the United States Constitution provides in relevant part that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. art. VI.

PTSD. (doc. 2, at 5; doc. 3 at 3, 13.) He contends that expert testimony "would have had a profound difference in the outcome" because it would have given the Court more information about the extent of the effect on him, and it was his "absolute right to have this extremely important part of his background explored and explained in a way that no doubt would have supported a downward departure resulting in a lower sentence." (doc. 3 at 4, 13-14.) He also accuses counsel of being "silent at sentencing" and "purposefully exclud[ing]" such critical information, even though he also acknowledges that the record of abuse was "part of the record" as covered in counsel's sentencing memorandum. (doc. 3 at 12.)

In order to overcome the "strong presumption" that counsel provided "reasonable professional assistance," Movant "cannot rest on conclusions, but must identify specific acts or omissions that were not the result of reasonable professional judgment." *Strickland*, 466 U.S. at 689-90. Beyond his conclusory allegations, Movant fails to identify the expert witness that counsel failed to produce, or to describe specifically what testimony the expert would have given and how it would have changed the outcome.

Movant also appears to claim that counsel should have presented more detail during oral argument. Counsel submitted a detailed sentencing memorandum with exhibits and argued at the sentencing hearing that Movant should receive a below-guideline sentence of 5-6 years. (doc. 36 at 1-6, 17; Tr. at 15-16.) The memorandum specifically contended that there was a link between the sexual abuse Movant suffered as a child and his criminal activity, arguing that:

- Movant suffered "psychological damage from having been violently and repeatedly sexually abused by a childhood friend's father," leading "to a lifetime of drug abuse" that "has led to extensive criminal activity"(doc. 36 at 1);

- He had "mental health and drug abuse troubles," documented by the treatment providers he saw between 2000 and 2010, as attached to his memorandum as Exhibits 1-3 (doc. 36 at 2-4);

7

- His past treatment and counseling was "primarily treating symptoms, rather than underlying mental health problems" (doc. 36 at 2);

- His psychological disorders "directly caused him to commit bank robberies," (doc. 36 at 11);

- His parents supported the claims of abuse with detailed written and oral statements (doc. 36 at Ex. 6; Tr. at 3-9.)

It also asked the Court to make specific "findings and statements on the record and in the Judgment and Commitment Order, so the BOP classification group will send him to an inpatient Bureau of Prisons (BOP) mental health facility" to be followed by a "BOP Residential Drug Abuse Program," (doc. 36 at 4-5). Counsel's written submissions thoroughly presented the factual basis of the child abuse and argued how it related to Movant's criminal activity.[4] As he noted, there was no need "to repeat everything [at the hearing] that's in the sentencing memorandum." (Tr. at 2.) Instead, counsel supplemented the sentencing memorandum with oral argument, the statements of Movant's parents, and Movant's allocution. (Tr. at 3-15.)

The Court stated that it was impressed with, and thoroughly considered, the sentencing memorandum. (Tr. at 3.) In response to the arguments that Movant's offenses were mitigated by his childhood abuse and its resulting impact, the Court disagreed, however:

> The Court: I accept what the defendant says at face value, and I'm very optimistic, given your current attitude, that you'll benefit from the treatment that the Bureau of Prisons can make available to you. Respectfully, I disagree with the defense that it's supportable basis here for a variance in view of the offense conduct . . .
>
> But at this point in your life, notwithstanding the very unfortunate things that have happened to you, I don't think you can use those today as an excuse for lighter treatment. I certainly agree that they're an explanation. It's an explanation for why you've done the things you've done, and I appreciate your lawyer educating me

---

[4] The memorandum also argued that the information Movant provided to the government warranted more than a one-level reduction for substantial assistance. (doc. 36 at 7-10; Ex. 5; Tr. at 15-16.) It asserted that Movant did not use a weapon in his robberies, and only carried the pistol in response to a threat from the husband of a probation officer with whom Movant developed a personal relationship. (doc. 36 at 12-14, 16.)

> about that background. *But as far as using it as a basis for more lenient treatment, I'm just–that part I can't buy . . .*
>
> So, I *respectfully am declining the request for a variance or a downward departure based on those background issues.* To some degree, you're already getting a benefit from the nature of the charges versus the underlying conduct.
>
> I think Probation is suggesting that an upward variance might be appropriate given the extensive uncharged conduct, and I'm not going to do that either. But I do think that goes into the picture here. (Tr. at 17-19 (emphasis added).)

The Court adopted the PSR and granted the government's motion for downward departure based upon substantial assistance, but saw no reason to depart more than one-level below the calculated 100-125 advisory guideline range, which placed Movant at a range of 92-115 months. (Tr. at 19; doc. 27 (PSR) ¶¶ 75, 91, 140.) It explained that Movant would have likely received a sentence "at or close to the top" of the original guideline range: "So instead of 122 months or 125 months, you're at 92 months. So your decision to cooperate with the government here has reduced your sentence by about 25 percent." (Tr. at 19-20.) The Court also made specific findings and recommendations relative to Movant's treatment once assigned to the BOP, and directed the Bureau or Prisons to update it as to Defendant's progess. (Tr. at 21.) Movant has not shown what more counsel could have argued, or how it would have changed this outcome.

Movant cites to cases that analyze the authority for a court to depart where extraordinary circumstances accompany a history of childhood trauma. (doc. 3 at 10-12.) The Court never questioned its authority to depart or vary from the guidelines based on the abuse, however. In addition, these cases do not address claims of ineffective assistance of counsel. *See, e.g., United States v. Roe*, 976 F.2d 1216, 1217-18 (9th Cir. 1992) (agreeing with the Fifth Circuit in *United States v. Vela,* 927 F.2d 197, 199 (5th Cir. 1991), that the "psychological effects of childhood abuse may only be considered as a basis for departure in extraordinary circumstances" under U.S.S.G. §

9

5H1.3); *United States v. Walters*, 256 F.3d 891, 894-95 (9th Cir. 2001) (remanding for an evidentiary hearing to resolve factual disputes where the district court "appears to have rejected Walter's claims of extraordinary abuse"). These cases involve a factual dispute over whether abuse actually occurred, or whether the sentencing court correctly applied the guideline. *See United States v. Williamson,* 183 F.3d 458, 462 (5th Cir. 1999) (holding that a misapplication of the guidelines is not cognizable on § 2255 review). Movant has not raised either of these issues.

In conclusion, counsel zealously documented Movant's childhood abuse and argued for a reduced sentence based upon the link between the abuse and his crimes. Movant's insistence that counsel should have been "*more* effective" essentially concedes that counsel was effective, which is all the Sixth Amendment requires. He has failed to establish that counsel's conduct was deficient, and ground one should be denied.

B.    **Multiple Count Sentence Enhancement**

Movant also claims that counsel failed to challenge the three-level adjustment for a multiple-count conviction under the sentencing guidelines. (doc. 2, at 7; doc. 3, at 19.) He contends that "counsel should have argued that the relevant conduct considered under the grouping rules was equivalent to double counting." (doc. 3, at 19.)

As noted, Movant pleaded guilty to three different offense committed on different dates: felon in possession of a firearm on July 6, 2011; bank robbery on October 12, 2011; and attempted bank robbery on October 11, 2011. (No. 3:11-CR-345 docs. 11, 24, 45; No.3:12-CR-093 docs. 1 at 4, 9, 14.) The robbery and attempted robbery involved different banks and different tellers, and the felon-in-possession count involved another event with a pistol unrelated to the robberies. Movant's advisory guideline calculation included a three-level multiple-count enhancement because each offense qualified as a separate group under U.S.S.G. §§ 3D1.1-3D1.5. (No.3:11-CR-345, doc. 27

(PSR) ¶¶ 44-46, 68-71.)

Movant fails to set forth what, if anything, counsel should have argued to show that this adjustment was not applicable. *See generally United States v. Kimler,* 167 F.3d 889, 893 (5th Cir. 1999) (counsel cannot be deemed ineffective for failing to raise a meritless argument). He has not shown that counsel was deficient in failing to challenge the multiple-count enhancement, and this claim should be denied.

## V.  RECOMMENDATION

The *Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody* should be **DENIED** with prejudice.

**SIGNED this 12th day of May, 2015.**

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE